```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
NORTH AMERICAN OLIVE OIL ASSOCATION,      :
                                          :       13 Civ. 868 (JSR)
         Plaintiff,                       :
                                          :       AMENDED PRELIMINARY
                                          :
         -v-                              :       INJUNCTION
                                          :
KANGADIS FOOD INC. d/b/a THE GOURMET      :
FACTORY,                                  :
                                          :
         Defendant.                       :
-----------------------------------------x
```

USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: DATE FILED: 5/7/13

JED S. RAKOFF, U.S.D.J.

   Plaintiff North American Olive Oil Association ("NAOOA") brings this action against defendant Kangadis Food Inc., doing business as The Gourmet Factory ("Kangadis"), asserting claims for false advertising under the Lanham Act and for deceptive acts and practices and false advertising under New York General Business Law sections 349 and 350.  NAOOA alleges that Kangadis has falsely and deceptively marketed a product under the Capatriti brand as "100% Pure Olive Oil" when in fact it contains an industrially processed oil produced from olive pits, skins, and pulp, known as "Olive-Pomace Oil" or "Pomace."  Kangadis represents that while Capatriti tins and bottles packed before March 1, 2013 consisted of 100% Pomace, tins and bottles packed after that date now contain 100% refined olive oil.

   NAOOA moved for a preliminary injunction.  On April 12, 2013, this Court, on consent of the parties, issued a preliminary injunction enjoining Kangadis "(1) from selling as '100% Pure Olive

1

Oil' any product containing Pomace, and (2) from selling any product containing Pomace without expressly labeling it as such." On April 19, 2013, the Court issued a second preliminary injunction, which (1) declined to extend the injunction to prohibit Kangadis from selling as "100% Pure Olive Oil" any product containing 100% refined olive oil; (2) ordered Kangadis to provide appropriate notice to potential consumers that "100% Pure Olive Oil" tins packed before March 1, 2013, contain Pomace; and (3) ordered NAOOA to post a $10,000 bond. The Court explained the reasons for these rulings in an Opinion and Order issued on April 24, 2013. Kangadis now moves for reconsideration, to which NAOOA consents in part and objects in part.

Kangadis's motion concerns the notice ordered in the Court's April 19 injunction. That portion of the injunction provides:

> [T]he Court hereby orders Kangadis to take reasonable steps to provide notice of its past mislabeling as to tins of "100% Pure Olive Oil" containing Pomace that have not yet been sold to end consumers. Specifically, the Court orders Kangadis, as soon as practicable, to send to each and every party to whom it has sold or distributed "100% Pure Olive Oil" containing Pomace within the last six months stickers or other labels that may be affixed to its products expressly informing consumers that the product contains Pomace . . . (the "stickers"). Kangadis is further ordered to send with the stickers a notice (1) informing the addressee that tins of "100% Pure Olive Oil" packed before March 1, 2013 contain Pomace, and (2) requesting that the addressee (a) immediately affix the stickers to any tins packed before March 1, 2013 still in the addressee's possession, and (b) immediately forward a copy of the notice and any remaining stickers to any and all downstream parties to whom the addressee sold or distributed any tins packed before March 1, 2013, unless those downstream parties are end consumers.

2

Kangadis requests that this portion of the injunction be replaced by a "voluntary" recall of all Capatriti tins and bottles from Kangadis's wholesalers, which Kangadis would then replace with Capatriti tins and bottles that do not contain Pomace. NAOOA consents to allowing Kangadis to recall mislabeled products instead of causing them to be marked with stickers, but argues that any sticker or recall program must extend to retailers and not just wholesalers. NAOOA also argues that stickers or recall must be accompanied by an appropriate notice clearly informing wholesalers and retailers that tins and bottles of labeled as "100% Pure Olive Oil" packed before March 1, 2013 actually consist of only Pomace and are being recalled or marked with stickers pursuant to a court order. To prevent any further delays, NAOOA also asks the Court specify the form this notice should take.

On reconsideration, the Court grants Kangadis's request that it be permitted to recall any tins or bottles of "100% Pure Olive Oil" containing Pomace rather than causing them to be marked with stickers. As the Court has previously explained, the purpose of the notice and sticker program ordered in the April 19 injunction was to ensure that potential consumers do not purchase Pomace that is falsely and misleadingly advertised as "100% Pure Olive Oil." That purpose is equally well-served by a recall; indeed, by removing mislabeled tins and bottles from the marketplace altogether, a recall may actually achieve the Court's goal even more completely than the sticker program, which the Court previously ordered on the

3

assumption that it would be less harmful to Kangadis than other alternatives. Given that NAOOA does not object to this portion of Kangadis's application, the Court sees no reason not to allow Kangadis to fully meet the Court's objective of protecting consumers and competitors from false advertising through alternative means that Kangadis believes will be more efficient and less disruptive.

However, the Court cannot accept Kangadis's suggestion that the recall extend only to wholesalers and not to retailers. Kangadis avers that it is "confident" that retailers have only a few days' supply of mislabeled product, given that supermarkets generally have limited shelf and storage space. Aff. of Themis Kangadis, ¶ 21. However, Kangadis previously represented that "very little" mislabeled product remained in its distribution chain, but now acknowledges that whole pallets of mislabeled product may still remain in its distributors' warehouses. Moreover, whether mislabeled tins are in the possession of wholesalers or retailers, they are no less mislabeled, and will, when sold, cause no less irreparable harm to unwitting consumers and to NAOOA.

Furthermore, Kangadis has not shown that it will be significantly more burdensome to extend a recall to retailers. In fact, Kangadis has a written recall policy, and just a few weeks ago told the USDA that a recent mock recall required only "3.5 hours to account for all product." Decl. of Nitin Reddy, ex. E, at 13. Under these circumstances, Kangadis's speculation about the quantity of mislabeled product held by retailers cannot justify curtailing

the scope of the Court's prior injunction. See Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." (internal quotation marks omitted)).

The Court also cannot accept Kangadis's suggestion that it be permitted to perform a recall without providing notice to wholesalers or retailers about this Court's orders and the fact that the "100% Pure Olive Oil" packed before March 1, 2013 consists of 100% Pomace. Wholesalers and retailers have a right to know the basis for the actions they will be asked to undertake pursuant to this Court's orders, not least to ensure that they fully understand the importance of compliance. See Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc., 646 F.2d 800, 803-04 (2d Cir. 1981) (approving notice to downstream distributors). In addition, to prevent any further delays, the Court will specify the form of the notice to be distributed, as set forth below.

Accordingly, for the foregoing reasons, as well as those set forth in the Court's Opinion and Order of April 24, 2013, the Court hereby amends its previously issued preliminary injunctions to read as follows:

1. Kangadis is enjoined from selling as "100% Pure Olive Oil" any product containing Pomace, and from selling any product containing Pomace without expressly labeling it as such.

2. The Court declines to enjoin Kangadis from selling as "100% Pure Olive Oil" any product containing 100% refined olive oil. The Court also declines to order Kangadis to provide notice of its past mislabeling on its website.

3. NAOOA is ordered to post a $10,000 bond.[1]

4. Kangadis is ordered to determine, as reasonably accurately as possible, the number of tins and bottles of Capatriti "100% Pure Olive Oil" packed before March 1, 2013 present in its distribution chain, including in the possession of wholesalers and retailers.

5. Kangadis is ordered to require all relevant wholesalers and retailers, by no later than May 20, 2013, either

    a. To return to Kangadis all stock of Capatriti "100% Pure Olive Oil" packed before March 1, 2013, or

    b. To affix to the front of each and every tin or bottle of Capatriti "100% Pure Olive Oil" packed before March 1, 2013 within their possession a sticker, to be provided in appropriate numbers by Kangadis, bearing the words "contains 100% Olive-Pomace Oil" in 36-point font.

6. Kangadis is ordered to provide to all wholesalers and retailers who have, in the past six months, purchased Capatriti "100% Pure Olive Oil" containing Pomace, a notice containing the following language:

---

[1] The Court notes that NAOOA posted a $10,000 bond on April 24, 2013, satisfying this requirement.

> NOTICE OF COURT ORDERS RE: SALE OF OLIVE-POMACE OIL
>
> You are receiving this notice because you purchased tins or bottles of the Capatriti brand of "100% Pure Olive Oil" that were packed before March 1, 2013.  Those tins or bottles contain only Olive-Pomace Oil.  Pursuant to the attached Court Order, if applicable, you are requested to (a) provide a copy of this letter to any retailers to whom you sold such tins or bottles and (b) either (i) apply the enclosed stickers to the front of tins or bottles currently in your possession with a "best by" date before March 1, 2015, or (ii) return such tins or bottles to us [Kangadis]. You can contact us at the phone number or address supplied below for returns or to request additional stickers.

To the extent Kangadis sends this notice to retailers directly, it is permitted to omit the language in clause (a) of the notice.  Similarly, to the extent Kangadis elects to perform a recall rather than to cause stickers to be applied to its mislabeled tins and bottles, or vice versa, Kangadis is permitted to omit the language in clause (b)(i) or clause (b)(ii) of the notice.  Finally, to the extent Kangadis elects to recall all of its Capatriti "100% Pure Olive Oil" tins and bottles, rather than merely those packed after March 1, 2013, it is permitted to amend the language of the penultimate sentence of the notice accordingly.

7. Kangadis is ordered to send the notice described in paragraph 6 above to all aforesaid wholesalers and retailers no later than close of business on May 10, 2013, by means of personal delivery, email, facsimile, next-day delivery, or other method of delivery reasonably intended to result in actual receipt within no more than 2 business days.  The notice must

include as a physical or electronic attachment or enclosure a copy of this Amended Preliminary Injunction. To the extent Kangadis elects to cause stickers to be affixed to its mislabeled tins and bottles rather than to recall them, an appropriate number of the required stickers must be included with each notice. A copy of the notice and any required stickers must be served simultaneously on counsel for NAOOA.

8. Kangadis is ordered to retain copies of the notices and any stickers actually sent pursuant to this Amended Preliminary Injunction, as well as a complete list of recipients, throughout the pendency of this litigation.

9. Kangadis is ordered, through counsel, to call Chambers jointly with opposing counsel not later than May 23, 2013, to report to the Court on its compliance with this Amended Preliminary Injunction.

SO ORDERED.

Dated:   New York, NY
         May 6, 2013

_____
JED S. RAKOFF, U.S.D.J.